UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
FRANK P. FACONTI, *Pro Se*,           :
                                      :
                Plaintiff,            :           **MEMORANDUM &ORDER**
                                      :
           -against-                  :           01-CV-2600 (DLI)(RML)
                                      :
WILLIAM J. HENDERSON, Postmaster      :
General of the United States Postal Service, :
                                      :
                Defendant.            :
----------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

Before the court is defendant's motion for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c), on plaintiff's third federal complaint alleging that the United States Postal Service ("USPS") discriminated against plaintiff on account of his disability in failing to reassign, rehire, or provide plaintiff with reasonable accommodations. Defendant contends that plaintiff is precluded, under the doctrine of *res judicata*, from filing this action because this action "arises out of the same nucleus of operative facts as" two previous actions brought by plaintiff, which were ultimately dismissed. *See* Def.'s Mem. at 2. For the following reasons, defendant's motion is granted.

**I.      Background**

The relevant facts were adequately summarized in Magistrate Judge Robert M. Levy's prior Memorandum and Order dated July 25, 2002 ("MJ Levy 7/25/02 M&O")[1] and will be discussed below only to the extent necessary.

Plaintiff served as a computer specialist for the USPS at the Brooklyn General Mail Facility

---

[1] In the prior matters, all parties consented to the matter assigned to the magistrate judge for all purposes, including entry of judgment, pursuant to 28 U.S.C. § 636(c)(1).

("BGMF") from 1970 until his disability retirement in January 1994. (MJ Levy 7/25/02 M&O at 2.) In March 1992, plaintiff sustained severe back injuries in a non-job related automobile accident (the "Accident"). (*Id*. at 2.) Plaintiff returned to work, but took some intermittent leave time. (*Id*.) On August 14, 1992, because of his back pain, plaintiff took an extended sick leave, but never returned to work. (*Id*. at 2-3.)

On January 19, 1993, plaintiff applied for disability retirement under the Civil Service Retirement Act ("CSRA"), which was ultimately granted. (*Id*. at 3.) In November 1993, plaintiff also submitted an application for Social Security benefits. (*Id*. at 6.) Although the Social Security Administration ("SSA") denied plaintiff disability benefits, plaintiff was declared "disabled," within the meaning of Title XVI of the Social Security Act and granted Medicare benefits. (*Id*. at 6; Pl.'s Mem. of Law ("MOL") at 8.)

In support of his applications for disability retirement and social security benefits, plaintiff submitted various medical reports, including a report and sworn statement from his treating neurologist, Dr. Leonard Pace. (*See* MJ Levy 7/25/02 M&O at 3-4.) Dr. Pace indicated that it was physically too stressful for plaintiff to commute to work or perform his job related duties. (*Id*.; Def.'s MOL at 3.) In support of his applications, plaintiff also stated, under oath, that he had difficulty driving any distance or standing for more than 10-15 minutes without significant pain. (*See* MJ Levy 7/25/02 M&O at 4, 6.) The daily commute made it "impossible for him to perform, attend or conduct the activities of [his] job." (*See Id.* at 4.)

Plaintiff made similar statements in his state personal injury case, stemming from the same Accident. Specifically, plaintiff testified that he was unable "to sit, stand, walk, or drive for even short periods of time" and was therefore incapacitated from working. (*Id*. at 7.) Moreover, as stated

in his application for Social Security benefits, Dr. Pace asserted, in the state court action, that because of plaintiff's injuries, "it is not recommended that he continue in his present line of work, even at a restricted level." (*Id*.) Plaintiff's vocational rehabilitation specialist, David B. Stein, Ph.D., submitted that "[plaintiff] is not gainfully employable, since he can no longer sustain work performance in any job, even at the sedentary level" and that "[plaintiff] does not retain the functional physical capacity to perform and sustain work, either in his usual occupation or in alternative jobs." (*Id.*) Ultimately, the state court action was settled.

While plaintiff's disability retirement application and state court action were pending, plaintiff provided USPS with a note from Dr. Pace indicating that plaintiff's condition was unchanged and he "continue[d] to be disabled and [could not] perform in a postal service work environment." (*Id*.) In June 1993, the USPS offered plaintiff the position of Distribution Operations Supervisor at the Brooklyn Processing and Distribution Center, but plaintiff declined the offer indicating that he was physically unable to perform the duties of that position. The USPS then reassigned plaintiff to the Mail Flow Controller position, but plaintiff indicated, again, that he was physically unable to perform these job functions and did not report to this job. (*Id*. at 7-8.)

## II.     Procedural History

### A.     EEOC Proceeding

In May 1997, a hearing was held before Administrative Judge David E. Licht of the Equal Employment Opportunity Commission ("EEOC") on the issue of whether the USPS discrminated against plaintiff in late March 1993 when he was not allowed to return to work because he previously filed for disability retirement. (Pl.'s MOL Ex. 3 at 140.) Judge Licht found that

> plaintiff was a person with a disability . . . [and] qualified . . . in that, with or without reasonable accommodation [plaintiff] could perform the essential functions

> of the position if accommodated by any of the proposals presented to the [USPS], including but not limited to use of a Fexi-Place work via modem or even to a local station near [plaintiff's] home.

(Pl.'s MOL Ex. 3 at 149.) Judge Licht further found that the "[USPS] did not attempt to present the necessary reasonable accommodation sought by the [plaintiff] to allow him to continue or resume work." (Pl.'s MOL Ex. 3 at 149.) Finally, Judge Licht concluded that although plaintiff was granted disability retirement in January 1994, plaintiff "was not afforded the opportunity of working with reasonable accommodation in accordance with his restrictions; nor did the [USPS] meet its absolute and continuing duty to accommodate." (Pl.'s MOL Ex. 3 at 151.)

**B.     Faconti I and II.**

Between January 1998 and April 2001, plaintiff filed 3 federal complaints alleging that the USPS discriminated against him based on his disability in failing to rehire, reassign or reasonably accommodate plaintiff. In January 1998, plaintiff filed his first action (docket number 98-cv-0275) in this Court ("Faconti I"), against the USPS Postmaster General alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and § 501 of the Rehabilitation Act of 1973 (the "Rehabilitation Act") for failing to rehire plaintiff or reasonably accommodate plaintiff. (Def.'s MOL Ex. 3.) Specifically, plaintiff alleges that, in March 1993, USPS discriminated against plaintiff for filing an application for disability retirement, when USPS selected a less qualified candidate over plaintiff for the Operations Support Specialist ("OSS") position. (*See* Pl.'s Faconti I Compl. at 2-4). In February 2001, plaintiff filed a second action (docket number 01-cv-1034) in this Court ("Faconti II"), against the USPS Postmaster General, alleging the same underlying facts and violations of the Americans with Disabilities Act ("ADEA") and the Rehabilitation Act. (Pl.'s Faconti II Compl. at 1.) Plaintiff alleged that, in failing to reasonably accommodate plaintiff's

disability, the USPS violated the Rehabilitation Act. (*Id*. at 4.)

C. **MJ Levy's Memorandum and Order dated July 25, 2002**

In May 2001, USPS filed a motion for summary judgment in Faconti I and a motion to dismiss in Faconti II. Plaintiff opposed both motions and cross-moved for partial summary judgment in Faconti I. In October 2001, Magistrate Judge Levy held oral argument the above motions. In a Memorandum and Order dated July 25, 2002, Judge Levy granted defendant's motions and denied plaintiff's motion for partial summary judgment in Faconti I. (*See* MJ Levy 7/25/02 M&O at 33.) Judge Levy found that plaintiff was not a "qualified individual with a disability" ("QID") during the pertinent time periods and, thus, was not entitled to protection under the Rehabilitation Act. Judge Levy explained that to obtain disability retirement, plaintiff would have had to establish that he *could not* perform the essential functions of his position, or an existing vacant position at USPS, even with a reasonable accommodation. However, to constitute a QID under the Rehabilitation Act, plaintiff would have had to establish the contrary, namely that he *could* perform the essential functions of the job with reasonable accommodation, which is wholly inconsistent and cannot be reconciled with plaintiff's assertions in his disability retirement application. (*Id*. at 15-18.) Thus, plaintiff was judicially estopped from bringing his disability discrimination claim under the Rehabilitation Act asserted in Faconti I and II.

Judge Levy also held that plaintiff did not state a claim for failure to provide a reasonable accommodation under the Rehabilitation Act because plaintiff never made any requests for accommodations to the USPS. (*Id*. at 23-24.) The only statements plaintiff ever made to the USPS concerning a reasonable accommodation were made in plaintiff's disability retirement application that was handled by an outside agency. (*Id*. at 24.) Moreover, plaintiff did not meet his burden of

showing that a reasonable accommodation was in fact available. (*Id*. at 20, 25-27.)

Judge Levy noted that by the time USPS declined plaintiff the OSS position, he had not reported to work for more than six months. Because plaintiff failed to report to work, stated under oath that he was unable to work, and presented expert witnesses indicating that he was physically unable to return to work, Judge Levy found that no reasonable jury could find that plaintiff was a QID at the time of the non-selection for the OSS position. (*Id*. at 15-17.)

Thereafter, plaintiff filed a motion for reconsideration that Judge Levy denied. Plaintiff appealed Judge Levy's decision to the Second Circuit Court of Appeals. In a summary order dated October 9, 2003, the Second Circuit affirmed the district court's decision holding that "the evidence is insufficient for a reasonable trier of fact to conclude that plaintiff was capable, at the time of the challenged employment actions, of performing the essential functions of the post office positions in question." *Faconti v. Potter*, 77 Fed. Appx. 68 (2d Cir. 2003).

Plaintiff then filed petitions for a panel rehearing with the Second Circuit, which were denied. He petitioned for writs of certiorari before the Supreme Court of the United States, but they were also denied. *Faconti v. Potter*, 541 U.S. 975, 124 S. Ct. 1892, 158 L. Ed. 2d 471 (2004). Plaintiff sought reconsideration of the Supreme Court's certiorari denials, which were also denied. *Faconti v. Potter*, 541 U.S. 1083, 124 S. Ct. 2433, 158 L. Ed. 2d 1001 (2004). In May 2005, plaintiff moved for relief from judgment pursuant to Fed. R. Civ. P. 60(b)(1) and 60 (b)(6) before Judge Levy, which was denied as well. *See Faconti v. Potter*, No. 98 CV 0275, 01 CV 1034, 2006 WL 208883 (E.D.N.Y. Jan. 25, 2006).

**B.    Faconti III**

Only one month after filing his complaint in Faconti II, in April 2001, plaintiff filed his third

federal complaint against the USPS Postmaster General ("Faconti III"). Plaintiff alleges the same cause of action, i.e. that USPS discriminated against him on account of his disability for failing to rehire, reassign or reasonably accommodate plaintiff. Plaintiff alleges that an industrial engineer at BGMF contacted plaintiff at home with questions on how to program a specific computer system. Because the program was complex, he offered to help in person. When plaintiff arrived at BGMF, he met with the plant manager, Greg Incontro, examined the problem and indicated that it would take 3-5 days to perform the programming changes. According to plaintiff, Incontro declined plaintiff's offer because plaintiff had "filed an application for disability retirement" and "would not be allowed on the clock." (*See* Pl.'s Faconti III Compl. at 4.)

In May 2005, plaintiff filed a motion for relief from judgment before Judge Levy and defendant filed the instant motion. A decision on the instant motion was stayed at Plaintiff's request pending the outcome of Judge Levy's decision on plaintiff's motion for relief from judgment. Judge Levy denied plaintiff's motion for relief from judgment because plaintiff did "not put forth any facts that would subject him to 'undue hardship' and the court [found] no reason to belie[ve] that upholding the judgment would work an injustice against plaintiff. (*See* MJ Levy 1/25/06 M&O.)

## III. Discussion

### A. Judgment on the Pleadings Standard

The standard to be applied to a motion for judgment on the pleadings brought under Fed. R. Civ. P. 12(c)) is the same as a motion to dismiss under Rule 12(b)(6), when the court considers materials within the four corners of the pleadings. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.), *cert. denied*, 513 U.S. 816, 115 S. Ct. 73, 130 L. Ed. 2d 28 (1994). "[C]onsideration is limited to the factual allegations in [plaintiff's] complaint, which are accepted as true, to documents attached

to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in [plaintiff's] possession or of which [plaintiff] had knowledge and relied on in bringing suit." *See Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). Here, the court relies on the pleadings, documents incorporated by reference, and matters of which the court takes judicial notice. *See Ballan v. Wilfred Am. Educ. Corp.*, 720 F. Supp 241, 237 (E.D.N.Y. 1989). Specifically, the court takes judicial notice of public documents, such as Judge Levy's prior decisions in Faconti I and II and plaintiff's complaints in those actions. Thus, it is unnecessary to convert the instant motion into one for summary judgment.

**B. Res Judicata**

*Res judicata* precludes parties or their privies from relitigating issues that were already decided, in a previous action, by a final judgment on the merits on issues that could have been raised in the previous action. *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 380 (2d Cir. 2003) (quoting *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000). The purpose of *res judicata* is to preserve the integrity of the judicial system by discouraging frivolous claims and preventing a party from taking factually inconsistent positions in subsequent litigation. *See Bates v. Long Island R.R. Co.*, 997 F.2d 1028 (2d Cir. 1998). *Res judicata* applies if: (1) the previous action involved a final adjudication on the merits; (2) the previous action involved the same parties or their privies; and (3) the claims asserted in the subsequent action were or could have been raised in the prior action. *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001).

Plaintiff is barred by *res judicata* from bringing the instant action. First, Judge Levy's decision on defendant's motion to dismiss and for summary judgment constitutes a final judgment on the merits. *See Exch. Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1130-31 (2d

Cir. 1976) (finding that a decision on a Rule 12 (b)(6) motion constitutes a judgment on the merits); *G&T Terminal Packaging Co., Inc. v. Consol. Rail Corp.*, 719 F.Supp. 153, 158 (S.D.N.Y. 1989) (finding that a decision on a summary judgment motion constitutes a judgment on the merits). Second, the previous actions involved the same parties because plaintiff brought all three actions against the USPS Postmaster General. *See Ferris v. Cuevas*, 118 F.3d 122, 126-27 (2d Cir. 1997).

Third, plaintiff's present claims were or should have been brought in the prior actions. *Res judicata* "bars future actions between the same parties on the same cause of action." *NBN Broad., Inc. v. Sheridan Broad. Networks*, 105 F.3d 72, 78 (2d Cir. 1997) (internal quotations omitted). In determining whether res *judicata* applies, New York courts take the transactional approach – determining whether the actions involve a "common nucleus of operative facts." *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000); *see NBN Broad.*, 105 F.3d at 78. "To ascertain whether [the three] actions spring from [a common nucleus], we look to whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understandings or usage." *Pike*, 266 F.3d at 91 (internal quotations omitted); *see NBN Broad.*, 105 F.3d at 78.

In the instant action, plaintiff asserts that the USPS' refusal to have plaintiff perform a 3-5 day programming project, due to his pending application for disability retirement, was discriminatory. In the two prior actions, plaintiff alleged the same basic facts – that he was injured in an unrelated Accident, applied for disability retirement, and, while on sick leave, the USPS did not allow plaintiff to work due to plaintiff's pending disability retirement application. Thus, plaintiff's claims were common in time, space, and motivation. In Faconti I, plaintiff claimed that

the USPS failed to select him for the OSS position because of his pending disability retirement application. (*See* Pl.'s Faconti I Compl.) In Faconti II, USPS allegedly failed to assign plaintiff to a comparable vacant position because of his pending disability retirement application. (*See* Pl.'s Faconti II Compl.) In Faconti III, the USPS allegedly discriminated against plaintiff by prohibiting him from working on a 3-5 day computer project because of his pending disability retirement application. (*See* Pl.'s Faconti III Compl.) These three actions certainly form a convenient trial unit. *See Pike*, 266 F.3d at 91.

Although, in the instant action, plaintiff alleges another instance where USPS allegedly did not allow plaintiff to work because of his pending disability retirement application, *res judicata* still bars this action because it is enough that the facts essential to the [instant] action were [already] present in the [prior actions]. *See Computer Assoc. Int'l., Inc. v. Altai, Inc.*, 126 F.3d 365, 369 (2d Cir.1997). In all three actions, plaintiff alleges that USPS discriminated against him because he applied for disability retirement.

Furthermore, all the alleged discriminatory acts occurred in 1993, and plaintiff filed his first complaint in 1998. Plaintiff could have and should have asserted the instant facts in his prior complaints. Judge Levy issued a thorough, lengthy, final and valid opinion and judgment, which was confirmed by the Second Circuit Court of Appeal's affirmance and the US Supreme Court's denial of certiorari. Moreover, pursuant to the rules of merger and bar, plaintiff's rights to remedies against the same defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose, are extinguished. *See Johnson v. Ashcroft*, 378 F.3d 164, 171 n. 10 (2d Cir. 2004); *see also* Restatement Second, Judgments § 24 (2006); Am. Jur. 2d Actions § 103 (2006). Plaintiff had a full and fair opportunity to litigate his claims and will not be

prejudiced by the dismissal of this action.

Plaintiff contends that, based on the EEOC administrative proceeding, where Judge Licht found plaintiff to be a QID, the USPS is judicially estopped from arguing that plaintiff is barred by *res judicata* from bringing this action. However, the EEOC is a federal agency and a federal court is not bound by decisions of federal agencies. *Univ. of Tennessee v. Elliott*, 478 U.S. 788, 793, 106 S. Ct. 3220, 3223, 92 L. Ed. 2d 635 (1986). In fact, a trial court may review a plaintiff's claims *de novo*, without giving consideration to the federal agency's findings. *Id.*

Finally, to allow plaintiff to proceed with this action would thwart the very purpose of *res judicata*. Parties would suffer unnecessary costs and vexation, judicial resources would be wasted, and the likelihood of inconsistent results would increase, thereby diminishing the integrity of the judicial system. *See Harborside Refrigerated Serv., Inc. v. Vogel*, 959 F.2d 368, 373 (2d Cir. 1992).

Accordingly, defendant's motion for judgment on the pleadings is granted. Plaintiff's complaint is dismissed in its entirety.

SO ORDERED

DATED:   Brooklyn, New York
         August 29, 2006

_____/s/_____
DORA L. IRIZARRY
United States District Judge